UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JASON JAMAAL JACKSON,

      Petitioner,

v.                           Case No. 3:05-cv-702-J-12HTS
                                       3:04-cr-113-J-12HTS

UNITED STATES OF AMERICA,

      Respondent.

_____

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #20; Motion), filed on April 5, 2006. The United States' Response in Opposition to Defendant's Amended Motion Pursuant to 28 U.S.C. § 2255 (Doc. #21; Opposition) was filed on April 24, 2006. The undersigned conducted an evidentiary hearing on May 11, 2006.

## I. Background

In 2004, Mr. Jason Jamaal Jackson was named in a four-count indictment charging him with various drug-related crimes. *See*

---

[1]  Specific, written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

Indictment (Doc. #1; Indictment), filed on April 14, 2004. The United States and Mr. Jackson thereafter entered into a plea agreement wherein he would enter a guilty plea to Count Two of the Indictment. Plea Agreement (Doc. #32; Plea Agreement), filed on September 20, 2004, at 1. Pursuant to the Plea Agreement, the Court dismissed the remaining counts and sentenced Mr. Jackson to a term of 188 months imprisonment. *See* Judgment in a Criminal Case (Doc. #39), filed on January 5, 2005, at 1-2. He did not directly appeal his conviction or sentence.

## II. Analysis

Petitioner asserts his counsel, Wade Martin Rolle, Esquire, was ineffective in several ways. He complains about his attorney's failure to file a notice of appeal. Motion at 2. Additionally, he claims the Plea Agreement's waiver of the right to attack his conviction is unenforceable due to his lawyer's having "told him [the waiver] would be taken out and to 'just sign it.'" *Id*. According to Petitioner, his attorney also failed to review or explain the United States Sentencing Guidelines (Guidelines). *Id*. Further, he contends a motion for downward departure should have been filed due to the use of an inappropriate criminal history category and "circumstances present to a degree not adequately taken into consideration." *Id*. Finally, it is argued the lawyer was ineffective in not filing a motion pursuant to Rule 35, Federal Rules of Criminal Procedure (Rule(s)), subsequent to the decision

rendered in *United States v. Booker*, 543 U.S. 220 (2005).  *Id.* at 3.[2]

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must usually fulfill a two-prong showing to prevail on an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . .

*Id.* at 687.  To meet the first prong, a petitioner must show that "counsel's [performance] fell below an objective standard of reasonableness[.]" *Zakrzewski v. McDonough*, --- F.3d ----, 2006 WL 1911328, at *3 (11th Cir. 2006) (per curiam) (internal quotation marks omitted); *see United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006).  In doing so, the defendant has to overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland*, 466 U.S. at 689.  To show prejudice, it must be proven "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Zakrzewski*, 2006 WL 1911328, at *3 (internal quotation marks omitted); *see Greer*, 440 F.3d at 1272.

---

[2]     Another argument, that "the PSR[] incorrectly calculated [Petitioner's] criminal history category," Motion at 2, appears to have been withdrawn at the evidentiary hearing.  *See* Transcript of Evidentiary Hearing (Doc. #24) at 5-6.

## A. Failure to Appeal

Generally, an attorney's failure to file an appeal when so requested entitles the defendant to file an out-of-time appeal regardless of whether he has advanced any meritorious grounds for one. *Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) (per curiam); *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995) (per curiam); *Boyd v. United States*, Nos. 6:05-CV-1106-ORL-19KRS, 6:04-CR-071-ORL-19KRS, 2006 WL 1169477, at *2 (M.D. Fla. May 2, 2006). In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court reiterated "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477.

In the instant case, Petitioner testified his interest in appealing concerned the anticipated decision in *Booker*.[3] Transcript of Evidentiary Hearing (Doc. #24; Tr. Evid.) at 27. Immediately after sentencing he had asked his attorney to do "whatever was necessary[.]" *Id.* at 29. He asked Mr. Rolle "about filing *when* [*Booker*] got passed[.]" *Id.* at 26 (emphasis added). His worry focused on *Booker's* effect upon his sentencing. *Id.* at 27. He also understood discussions during the sentencing hearing to reflect his desires in that regard. *Id.* at 30.

Mr. Rolle confirmed through his testimony he had discussed the importance of *Booker* issues with Petitioner prior to the sentencing

---

[3]    For simplicity's sake, *Booker* will be referenced exclusively when describing the parties' identification of what was, at the plea and sentencing hearings, an upcoming decision.

hearing.  *Id*. at 49; *see also id.* at 61 (case had been "passed" at least once to wait for the decision to come down); Transcript of Sentencing Hearing (Doc. #41; Tr. Sent.) at 11.  Then, within a day or so after sentencing, he discussed with Petitioner his prospects for appeal, indicating he "didn't see anything appeal[]able."  Tr. Evid. at 54; *see also id.* at 72.  However, depending on the outcome of *Booker*, Mr. Jackson might "have a recourse[.]"  *Id*. at 54. Petitioner decided "he did not want to file a direct appeal."  *Id*. at 55.  Still, he expressed disappointment with the length of his sentence.  *Id*.  "Whatever avenue would have facilitated" a shorter sentence, stated the attorney, "I think Mr. Jackson would have taken."  *Id*. at 64.  Mr. Rolle was aware Petitioner desired action "[i]f there was a change in the law that was favorable to him[.]" *Id*. at 66.  By the time the two spoke post-*Booker*, Petitioner "was already in his final place [of incarceration] . . . so it was some months later."  *Id*. at 56.  At that point, the two men discussed only "the ineffective assistance of counsel appeal, not a direct appeal."  *Id*. at 55.

The testimony summarized above indicates Petitioner expressed keen interest in action being taken based upon *Booker* if its holding was of benefit to him.  Still, there appears to have been no specific instruction to file a direct appeal, at least not within the time allowed for doing so.  To the extent the testimony is in conflict on this point, that of Mr. Rolle is credited. Petitioner was somewhat vague in his testimony, and it is doubtful

that he fully appreciated the distinction between direct appeals, motions for resentencing, and collateral attacks.

The record is most reasonably read to establish that, when his attorney consulted with him after sentencing, Mr. Jackson chose to pin his hopes on a possible later change in the law, not on a direct appeal.  Indeed, when Mr. Rolle and his client met shortly after sentencing, both *Booker*'s content and timing were unknown. It was merely fortuitous the Supreme Court's decision was handed down during the narrow window during which Petitioner could have filed a direct appeal.  As there is no indication Mr. Jackson anticipated *Booker* would be decided during that time, it would be implausible to suppose he instructed his attorney to file a direct appeal upon rendering of the opinion.

Notwithstanding the foregoing discussion, even if the record could be read to suggest Mr. Rolle was asked to file any sort of appeal, such was made dependent on *Booker* being favorable to Petitioner.  Essentially, Mr. Jackson intended for his attorney to examine the opinion and determine whether it was of benefit to him. At the evidentiary hearing, Mr. Rolle explained he "did not think that decision had [a]ffected his case in the manner that it was decided." *Id.* at 55; *see also id.* at 29 (Petitioner acknowledging his understanding the lawyer took no action based on *Booker* "because he had a belief that it wouldn't have changed anything"). As discussed in part E., *infra*, there is no substantial reason to think Petitioner would have been given a different sentence had the Guidelines been viewed as advisory.  Accordingly, even if failure

to file a direct appeal based on contingent instructions could constitute ineffective assistance of counsel, here it cannot be found the attorney interpreted the instructions unreasonably.

## B.  Knowing and Voluntary Appeal Waiver

In the Motion, it is argued the appeal waiver was not knowing and voluntary.  Motion at 2.  Allegedly, Petitioner's "attorney told him it would be taken out and to 'just sign it.'"  *Id.*

No evidence has been adduced to support this contention.  On cross-examination, Petitioner revealed his wish the waivers could have been removed, stating his attorney said he would "try to get [them] taken out[,]" Tr. Evid. at 37, but Mr. Jackson did not testify he was ever assured such would actually be accomplished. Instead, he admitted he knew he was giving up his right to appeal. *Id.* at 20; *see also* Transcript of Digitally Recorded Change of Plea Hearing (Doc. #42; Tr. Plea) at 12-15.  He merely believed *Booker* issues were being preserved, in relation to which he would have "a right to come back and get resentenced." Tr. Evid. at 25.  As neither witness at the evidentiary hearing stated Mr. Jackson was ever told the appeal waiver provision would actually be taken out of the plea agreement, the Motion's assertion to the contrary cannot succeed.

## C.  Guidelines Never Reviewed or Explained

Petitioner testified he failed to understand, both during the earlier proceedings and presently, the scheme employed by the Guidelines.  *Id.* at 23.  He even declared he was unaware there were such things as federal guidelines.  *Id.* at 33.  He claimed his

7

lawyer never went over the Plea Agreement with him, *id.* at 32,[4] and met with him for only two or three minutes prior to the sentencing hearing. *Id.* at 25. Although he said he was surprised at being classified a career offender, he conceded Mr. Rolle had discussed career offender status with him "[r]ight before" sentencing. *Id.* at 32. Mr. Jackson then admitted the conversation took place "probably like a month before" he was sentenced. *Id.* However, he maintained he was never told his "minimum sentence was going to be 188 months[.]" *Id.* at 33. Nonetheless, he acknowledged his lawyer had sent him a copy of the presentence report, which contained the grimmer calculation of "21 years to 27 years." *Id.* at 38. Petitioner also agreed "that was later changed to the 188 to 235 months[.]" *Id.* at 38-39.

Mr. Rolle testified he discussed the plea agreement with Petitioner for much longer than five or ten minutes. *Id.* at 46-47. He estimated the meeting would have taken "45 minutes to an hour." *Id.* at 46. He discussed career offender status with Petitioner, who appeared to understand. *Id.* at 47. Additionally, he met with Petitioner concerning the presentence report. *Id.* at 48. The minimum Guidelines sentence was reviewed. *Id.* at 49. There was also extensive dialogue about the possible effects of the upcoming *Booker* decision. *See, e.g., id.* at 49-51.

---

[4]     On cross-examination, Petitioner said the attorney had reviewed the document with him for "like five to ten minutes at the most." *Id.* at 37.

8

Having considered the testimony and demeanor of the witnesses, and the transcripts of past hearings,[5] the attorney's statements are credited to the extent they are inconsistent with those of Petitioner. Clearly, ineffective assistance of counsel has not been demonstrated in regard to this issue. While Mr. Jackson may never attain expertise as to the intricacies of the Guidelines, he was apprised of their effect on the facts of his case. Moreover, during the plea hearing, the Court explained the statutory minimum and maximum penalties Petitioner faced. Tr. Plea at 17-18; *see also, e.g., id.* at 19-21, 23-25 (explanation of various aspects of Guidelines). Mr. Jackson stated he understood his exposure and had no questions. *Id.* at 18. Thus, he "knew at the time he pleaded guilty that his sentence might be . . . more severe [than the one] he actually received." *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam). Petitioner has failed to show a reasonable probability that, had counsel explained matters differently, "he would not have pleaded guilty and would have insisted on going to trial." *Id.* (internal quotation marks omitted).

## D. No Motion for Downward Departure Filed

According to Mr. Jackson, a motion for downward departure or sentencing memorandum should have been filed due to over-representation of his criminal history, and he suggests a motion

---

[5]     It is noted that, at the plea hearing, Mr. Jackson indicated under oath he had discussed his case fully with his attorney. Tr. Plea at 15; *see id.* at 32 (acknowledging terms of plea agreement discussed thoroughly). Then, at the sentencing hearing, Petitioner represented he had had the opportunity to read the presentence report and discuss it with his lawyer. Tr. Sent. at 3.

for downward departure should have been made for "circumstances present to a degree not adequately taken into consideration." Motion at 2.

In its brief, the government observes that, "[d]uring counsel's lengthy and passionate statement in mitigation, he urged the Court to consider that the defendant's criminal history did not include prior criminal conduct of a large-scale nature, but were unfortunate arrests of a small-time drug dealer looking to make ends meet." Opposition at 9-10 (citing Tr. Sent. at 15-21). "[G]iven that it appears counsel chose to make an oral plea rather than appearing litigious prior to sentencing[,]" it argues, "nothing in the record . . . suggests that counsel's decision not to file such a motion was unreasonable[.]" *Id.* at 10.

At the evidentiary hearing, Petitioner opined he "didn't think [he] should have been [a] career offender because the crime was . . . so little." Tr. Evid. at 33. *But cf.* Tr. Plea at 24 (explanation that plea agreement classifies as career offender). He expressed uncertainty about whether he really committed one of the past crimes. Tr. Evid. at 33-34. Yet, he agreed his mother's house was searched and crack cocaine found, and that he "admitted the drugs were [his.]" *Id.* at 34. He then acknowledged that he, "in fact, . . . possessed [the] crack cocaine." *Id.* Next, Petitioner claimed he was unsure as to whether he had pled guilty to the sale of cocaine since he "didn't know that when [he] pled time served that that was going to give [him] a guilty plea." *Id.* at 35.

Mr. Rolle testified he did not believe there was any
"extensive conversation about filing a downward departure." *Id.* at
61. He thought Petitioner's criminal history "was [not]
necessarily overrepresented." *Id.* at 70.

Petitioner has failed to mount a credible attack on the
handling of his criminal history. Insofar as his former counsel's
representation in light thereof is concerned, it has not been
established Mr. Rolle behaved in a professionally unreasonable
manner. As highlighted by the government, the sentencing hearing
included an impassioned statement by the lawyer that attempted to
portray Petitioner's criminal history sympathetically. *See* Tr.
Sent. at 16-20. The aim was to secure a sentence in the lower part
of the Guidelines range, and, indeed, the Court was convinced Mr.
Jackson deserved a sentence at the low end, *id.* at 27-28,
notwithstanding the government recommendation of a mid-level term.
*See id.* at 22. Petitioner cites no authority demonstrating that,
under the circumstances, counsel was required to file a motion for
departure or take any other action. He also makes no claim his
attorney had any reason to suspect his record of convictions
leading to career offender status might be inaccurate or otherwise
susceptible to challenge, and he acknowledged through the Plea
Agreement his "understand[ing] . . . that he is a career
offender[.]" Plea Agreement at 2.

Similarly, Petitioner has failed to establish a motion to
depart was needed "based on circumstances present to a degree not
adequately taken into consideration." Motion at 2. He does not

11

specifically recount any circumstances that were inadequately accounted for.[6]

## E.  No Rule 35(a) Motion Filed

Petitioner concentrates his written argument on the proposition Mr. Rolle should have filed a Rule 35(a) motion. Motion at 3-4.  Had he done so, it is contended, "the sentencing judge could have sentenced [Mr. Jackson] to a substantially [shorter] amount of time." *Id*. at 3.  He urges "counsel's failure . . . to file a Rule 35(a) motion constitutes ineffective assistance of counsel on its face." *Id*. at 3-4.

Rule 35(a) provides for correcting "arithmetical, technical, or other clear error" "[w]ithin 7 days after sentencing[.]"  It is not disputed that *Booker* was decided within seven days of Petitioner's sentencing.  *See also* Rule 45(a)(2) ("[I]ntermediate Saturdays, Sundays, and legal holidays [are excluded from the calculation] when the period [specified] is less than 11 days.").

Intriguingly, the Eleventh Circuit, in an opinion addressing the types of error cognizable under Rule 35(a), has stated "*Booker* error does not fall into any of these categories[.]" *United States v. McCallum*, 150 F. App'x 938, 939 (11th Cir. 2005) (per curiam). Still, assuming Rule 35(a) could have provided a proper path to challenge Petitioner's sentence and counsel erred in not filing a

---

[6]    The United States speculates "defendant is referring to the Supreme Court's decision in <u>Booker</u> as the basis upon which counsel should have moved for a downward departure pursuant to Rule 35(a)."  Opposition at 10.  Please see the Court's discussion, *infra*, for treatment of Mr. Jackson's argument that "counsel was ineffective by failing to file a Rule 35(a) motion."  Motion at 3.

motion thereunder, Mr. Jackson has not satisfied the prejudice prong of the *Strickland* test.  The primary case on which he relies, *Harris v. United States*, No. 1:04-CR-11, 1:05-CV-147, 2005 WL 1888843 (N.D. Ind. Aug. 9, 2005), is appropriately distinguished, despite counsel's assertion of an "unbelievable" degree of factual similarity.  Tr. Evid. at 12.  In *Harris*, prejudice was held to have been demonstrated since the judge had clearly implied "that if the court had discretion to depart from the guideline range, it would likely have done so[.]"  2005 WL 1888843, at *3.  In contrast, here Petitioner was told his "sentence is imposed for the following reasons:  The court finds that a sentence at the low end of the guideline range is sufficient to reflect the seriousness of the offense, provide just punishment for the crime, and to promote respect for the law."  Tr. Sent. at 27-28.  Accordingly, unlike the *Harris* court, which thoroughly explicated its disapproval of the prescribed sentence, 2005 WL 1888843, at *3, in the present case no regrets were expressed relative to the harshness of the Guidelines range.[7]  Rather, the sentence was characterized as reflecting "just punishment[.]"  Tr. Sent. at 28.[8]

---

[7]     It is, of course, possible Petitioner would have been given a different sentence had the Guidelines been viewed as advisory.  But, as the Eleventh Circuit has cautioned in an analogous situation, "[i]f we have to speculate concerning the result in the district court without the error," the burden of showing prejudice has not been met. *United States v. Cartwright*, 413 F.3d 1295, 1301 (11th Cir. 2005) (per curiam); *see United States v. Underwood*, 446 F.3d 1340, 1344 (11th Cir. 2006).  That a defendant has been given "the lowest possible sentence within the Guidelines range . . . is not sufficient to demonstrate a reasonable probability of a lesser sentence." *Underwood*, 446 F.3d at 1344; *see Cartwright*, 413 F.3d at 1301.

[8]     If Petitioner is also suggesting *Booker* provided an independent, constitutional ground to challenge his status as a career offender, his argument is not found persuasive.  Determination of his status was based on admitted facts, *see*

### III. RECOMMENDATION

For the foregoing reasons, it is recommended the Motion (Doc. #20) be **DENIED**.

**ENTERED** at Jacksonville, Florida, this 15th day of August, 2006.


_/s/_          Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

The Honorable Howell W. Melton
Senior United States District Judge

Assistant United States Attorney (Corsmeir)

Gerald S. Bettman, Esquire

Petitioner

---

Tr. Sent. at 17-18; Tr. Plea at 24, 32, so no "constitutional error under _Booker_" was committed. _Cartwright_, 413 F.3d at 1300.

14